## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Sandra J. NUNEZ,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civ. No. 2:14-4664 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Sandra J. Nunez brings this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI"). Nunez alleges that she is unable to engage in substantial gainful activity because she suffers from leg pain, back pain, depression, and problems with concentration. (R.[1] 241, ECF No. 6)

For the reasons set forth below, the ALJ's decision is AFFIRMED.

## I.    BACKGROUND

Nunez seeks DIB and SSI benefits for a period of disability beginning December 31, 2010. (R. 19) Her claims were first denied on August 5, 2011 and denied again on reconsideration on November 23, 2011. On December 2, 2011, Nunez filed a request for a hearing. On October 11, 2012, a hearing was held, at which Nunez was represented by counsel and testified with the aid of a Spanish interpreter. Following

---

[1]    "R." refers to the pages of the administrative record filed by the Commissioner as part of her answer. (ECF No. 6)

the hearing, the record was left open for four months so that Nunez
could submit additional evidence from Raritan Bay Mental Health. Nunez
did not do so. On February 20, 2013, Administrative Law Judge ("ALJ")
Joel H. Friedman denied Nunez's application for SSI and DIB benefits.
(*Id.* 19–28) On June 6, 2014, the Appeals Council denied Nunez's request
for review, making the ALJ's decision the final decision of the
Commissioner. Nunez now appeals that decision.

## II.   DISCUSSION

To qualify for Title II DIB benefits, a claimant must meet the
insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI
benefits, a claimant must meet the income and resource limitations of 42
U.S.C. § 1382. To qualify under either statute, a claimant must show
that she is unable to engage in substantial gainful activity by reason of
any medically determinable physical or mental impairment that can be
expected to result in death or that has lasted (or can be expected to last)
for a continuous period of not less than twelve months. 42 U.S.C. §§
423(d)(1)(A), 1382c(a)(3)(A).

### a.  Five-Step Process and this Court's Standard of Review

Under the authority of the Social Security Act, the Social Security
Administration has established a five-step evaluation process for
determining whether a claimant is entitled to benefits. 20 C.F.R. §§
404.1520, 416.920. Review necessarily incorporates a determination of
whether the ALJ properly followed the five-step process prescribed by
regulation. The steps may be briefly summarized as follows:

> **Step 1:** Determine whether the claimant has engaged in
> substantial gainful activity since the onset date of the alleged
> disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to
> step two.

2

**Step 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step 5:** At this point, the burden shifts to the SSA to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation and citation omitted). That "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). Nevertheless, the ALJ's factual findings will not be disregarded lightly. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Secretary's decision, with or without a remand to the Secretary for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Commissioner*, 235 F. App'x 853, 865–66 (3d Cir. 2007).

Outright reversal with an award of benefits is appropriate only when a fully developed administrative record contains substantial evidence establishing that the claimant is disabled and entitled to benefits. *Podedworny*, 745 F.2d at 221-222; *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000); *see also Bantleon v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 99537, at *38-39 (D.N.J. 2010).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps

of the five step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Commissioner of SSA*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Leech v. Barnhart*, 111 F. App'x 652, 658 (3d Cir. 2004) ("We will not accept the ALJ's conclusion that Leech was not disabled during the relevant period, where his decision contains significant contradictions and is therefore unreliable."). It is also proper to remand where the ALJ's findings are not the product of a complete review which "'explicitly' weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994).

### b. The ALJ's decision

ALJ Friedman concluded that Nunez was not disabled.

At step one, the ALJ determined that Nunez had not engaged in substantial gainful activity since December 31, 2010, her alleged disability onset date. (R. 21)

At step two, the ALJ found that Nunez had the following severe impairments: "myofascial pain syndrome with chronic back pain; diabetes mellitus; obesity; and depression." (*Id.*)

At step three, the ALJ determined that Nunez's impairments, alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404 Subpt. P, App. 1 (the "Listings"). (*Id.* 22)

Then, the ALJ found that Nunez had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that due to her depression, she is also limited to simple routine jobs in a low contact setting (i.e. that does not involve dealing with the general public, and

that only involves low contact with coworkers and supervisors).

(*Id.* 23)

At step four, the ALJ determined that based on her RFC, Nunez is unable to perform any past relevant work. (*Id.* 26) The ALJ noted that Nunez was 44 years old on her alleged disability onset date, which puts her in the category of "younger individual age 18–49." (*Id.* 27) The ALJ also found that Nunez is "not able to communicate in English, and is illiterate in English." (*Id.* 27) The ALJ noted that "transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled." (*Id.*)

At step five, the ALJ considered Nunez's "age, education, work experience, and residual functional capacity," and determined that she could perform jobs that exist in significant numbers in the national economy. (*Id.*) As noted above, such a finding at step five requires that benefits be denied.

### c. Nunez's appeal

Nunez argues that the Commissioner's decision is not supported by substantial evidence. Specifically, Nunez argues that the ALJ (1) erred in finding that Nunez does not meet the criteria for Listing 12.04 (affective disorders) at step three (Pl. Br.[2] 10–17, ECF No. 9); (2) did not adequately consider Nunez's obesity at the step three and four analysis (*id.* 23–30); and (3) did not adequately explain his RFC findings (*id.* 20–23, 30–38).

I find the ALJ's findings to be supported by substantial evidence. Nunez's arguments to the contrary are not persuasive.

---

[2]    This brief and the Commissioner's opposition were submitted pursuant to L. Civ. R. 9.1.

### d. Analysis

#### i. *ALJ's step three analysis of Nunez's impairments*

Nunez argues that the ALJ erred in finding that she did not meet the criteria for Listing 12.04 (affective disorders) at step three. (Pl. Br. 10–17) Specifically, Nunez argues that (a) the ALJ did not mention the paragraph A criteria for Listing 12.04; (b) the ALJ inadequately explained his findings, especially in his paragraph B analysis; and (c) the ALJ erred in his paragraph C analysis.

At Step 3 of the sequential analysis, the ALJ evaluated Nunez's impairments to determine if they met or equaled an impairment in the Listing of Impairments in Appendix 1. 20 CFR § 404.1520(a)(4)(iii). Specifically, the ALJ discussed the criteria of Listing 12.04 (affective disorders). 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04.

The ALJ found that neither the paragraph B nor paragraph C criteria were met for Listing 12.04. Therefore, he did not err by omitting paragraph A in his analysis, as Listing 12.04 is only met "when the requirements in *both* [paragraphs] A and B are satisfied, or when the requirements in [paragraph] C are satisfied." *Id.* (Moreover, it appears the ALJ found that Nunez's impairments met the paragraph A criteria based on his analysis regarding paragraph B.)

The ALJ also properly supported his paragraph B analysis with evidence in the record. To satisfy the paragraph B criteria, a claimant's disorder must have resulted in at least two of the following four limitations:

1. Marked restriction of activities of daily living; or
2. Marked deficiencies in maintaining social functioning; or
3. Marked deficiencies in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04B.

Contrary to Nunez's argument, the ALJ explained and substantiated each of his findings in the four functional areas. In fact, the ALJ credited Nunez's own testimony and function report, as well as her daughter's third party function report, for the first three functional areas.

The ALJ found that Nunez has mild restriction in the activities of daily living. (R. 22) In doing so, the ALJ noted that even on Nunez's own function report, Nunez admitted to being able to watch television, shower, wash dishes, talk on the phone, cook for her children, and take them to school. (*Id.* (citing R. 252)) Nunez stated that she goes outside for her doctors' appointments; attends church every Sunday; and shops for groceries every two weeks. (*Id.* 254–55) The ALJ also cited the report of Nunez's daughter that she helps Nunez with cooking dinner, shopping, and cleaning. (*Id.* 22) Nunez did say that it took her longer to do things because of her pain. (*Id.*) Together, this evidence supports the ALJ's finding that Nunez has only mild restriction in daily living.

The ALJ determined that Nunez has moderate difficulties in social functioning. (*Id.* 22) The ALJ cited to Nunez's hearing testimony, in which she stated that she "has difficulty interacting independently, appropriately, effectively, and on a sustained basis with other individuals." (*Id.* 22) In her function report, Nunez indicated that she does not go out often, but she does talk to others on a daily basis and play card games with friends weekly. (*Id.* 22, 256) She also indicated that she visits her family's house once a month. (*Id.* 256) Finally, the ALJ noted that Nunez used to visit friends more often but rarely does that now, and that Nunez's daughter reported that her mother isolates

8

herself. (*Id.* 22 (citing R. 260–67)) This evidence is consistent with the ALJ's finding of moderate impairment in social functioning.

The ALJ found that Nunez has moderate difficulties in concentration, persistence, or pace. (*Id.* 23) The ALJ credited Nunez's testimony, which showed she "has some difficulty in sustaining focus, attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings." (*Id.* 23) In her function report, Nunez also wrote that her daughter calls her three times each day to remind Nunez to take her pills and go to her appointments. (*Id.* 23, 254) Nunez's daughter confirmed this. (*Id.* 23 (citing R. 260–67)) This evidence is consistent with the ALJ's determination that Nunez experiences moderate difficulties in concentration, persistence, or pace.

The ALJ determined that Nunez has not experienced any episodes of decompensation of extended duration. (*Id.* 23) Nunez does not offer any evidence to suggest otherwise, and there is nothing in the record to suggest Nunez suffered from any extended episodes of decompensation.

Because Nunez's impairments did not cause at least two "marked" limitations,[3] or else one marked limitation and repeated episodes of decompensation, the ALJ properly found that the paragraph B criteria were not met. (*Id.*)

The ALJ also properly found that Nunez's impairments did not meet the paragraph C criteria. To meet the paragraph C criteria for Listing 12.04, a claimant must have a

---

[3]    A marked limitation is defined as one that is "more than moderate but less than extreme." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, §12.00C. "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, *as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.*" *Id.* (emphasis added)

> [m]edically documented history of a chronic affective disorder
> of at least 2 years' duration that has caused more than a
> minimal limitation of ability to do basic work activities, with
> symptoms or signs currently attenuated by medication or
> psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended
>    duration; or
> 2. A residual disease process that has resulted in such
>    marginal adjustment that even a minimal increase in
>    mental demands or change in the environment would be
>    predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function
>    outside a highly supportive living arrangement, with an
>    indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04C. Nunez does not cite any
evidence to suggest that her impairments meet the paragraph C criteria.
Nunez only repeats the ALJ's analysis of evidence between 2011 and
2012, during which time Nunez "was not working, [and was] isolated at
home and dependent on her daughter and other family members to
perform chores and other necessary actions for her, actions which even
include calling the plaintiff three times a day to ensure that she took her
medication in a timely manner." (Pl. Br. 15) However, the ALJ considered
those limitations in his paragraph B analysis and did not find any
marked limitations as a result. Furthermore, there is no evidence in the
record of repeated episodes of decompensation, no indication that even a
minimal increase in mental demand or change in environment would
cause Nunez to decompensate, and no indication that Nunez cannot
function outside of a highly supportive living arrangement.  Based on
this evidentiary record, the ALJ did not err in finding that Nunez's
impairment did not meet the paragraph C criteria.

Finally, Nunez argues that the ALJ erred in not specifically
analyzing listings for obesity or diabetes. (Pl. Br. 17–18) That is not so.
There is no listing for either condition as such, in isolation; rather the

listings cover complications of diabetes[4] (e.g., Listings 2.00, 6.06, 11.14, 1.05), and provide that obesity is to be analyzed in combination with a claimant's other impairments (SSR 02-1p, 2000 WL 628049 (S.S.A. Sept. 12, 2002)). Nunez does not suggest that the ALJ should have analyzed any of the specific listings for complications of diabetes; indeed, it appears Nunez's diabetes is currently under control. (R. 61–62) I discuss the ALJ's analysis of Nunez's obesity in the next section.

### ii. ALJ's analysis of Nunez's obesity at step three and at the RFC determination

Nunez argues that the ALJ did not properly consider obesity in steps three, four, and five of his analysis. (Pl. Br. 23–30) I find that substantial evidence supports the ALJ's findings regarding obesity.

As of the date of her application (February 1, 2011), Nunez weighed 158 pounds. (R. 26, 241) Her height is five feet two inches. (Id.) This means Nunez's body mass index (BMI) was 28.9, so she would have been considered overweight, rather than obese. (SSR 02-1P, 2002 WL 34686281 (S.S.A. Sept. 12, 2002) ("For adults, both men and women, the Clinical Guidelines describe a BMI of 25–29.9 as 'overweight' and a BMI of 30.0 or above as 'obesity.'"); www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm. However, as the ALJ noted, Nunez weighed 169 pounds at a later examination in July 2011. (R. 26) Although Nunez has not been consistently obese during her alleged period of disability, the ALJ nonetheless considered Nunez's alleged obesity in his analysis.

At step two, the ALJ found that obesity was one of Nunez's severe impairments. (Id. 21) At step three, the ALJ considered obesity in conjunction with Nunez's other impairments in determining that her

---

[4]     Currently, Nunez's diabetes is "under control" as a result of her 100-pound weight loss following bariatric surgery, and she no longer needs to take medication for it. (R. 61–62)

obesity, combined with her other impairments, did not meet or medically equal the severity of one of the listed impairments. (*Id.* 22) Nunez does not point to any evidence to dispute this finding. In determining Nunez's RFC, the ALJ specifically noted that her obesity had been taken into account. (*Id.* 26 (noting that Nunez was obese and noting her exact height and weight).) The ALJ also limited Nunez to "light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)." (*Id.* 23) Nunez does not explain why her obesity should have resulted in a different RFC; she just states that the ALJ failed to consider it, a contention that is refuted by a reading of the ALJ's decision. Indeed, the ALJ's RFC determination is supported by substantial evidence, as discussed in the following section.

### iii. *ALJ's determination of Nunez's RFC*

Nunez argues that the ALJ did not adequately explain his RFC determination. (Pl. Br. 20–23, 30–38) Specifically, Nunez contends that (1) the ALJ did not consider the numerous records that document her impairments (*id.* 20–23); (2) the ALJ did not fully consider Nunez's subjective complaints (*id.* 34–37); and (3) the ALJ improperly weighed the medical opinion of Dr. Swan (*id.* 19–20, 37). I find that the ALJ sufficiently analyzed the evidence in the record and explained his RFC findings, which are supported by substantial evidence.

#### 1. ALJ's consideration of records documenting Nunez's impairments

Nunez contends that the ALJ did not consider the numerous records that document her impairments. (Pl. Br. 20–23) In particular, Nunez questions the ALJ's analysis of her psychiatric records.

However, the ALJ clearly evaluated the evidence in the record, including psychiatric evidence, in arriving at his RFC determination.

Specifically, the ALJ considered the following evidence:

(1) Nunez's own disability application (citing R. 240–48), in which she alleged disability because of neck pain, back pain, depression, and problems concentrating;

(2) Reports from state agency (DDS) medical consultants[5] indicating that Nunez was able to do light work; Nunez had little longitudinal history; there was no evidence she suffered from any psychological illness other than depression; and Dr. Doshi noted that Nunez developed major depression since losing her job, so with treatment, her depression should improve (citing R. 81–92, 94–105, 107–17, 119–29);

(3) Nunez's function report, in which she indicated that she could not lift much due to her shoulder and back pain; she could not walk more than two blocks or stand long; she could not concentrate sometimes; she felt anxious at times; and she forgets things and needs to make lists (citing R. 252–59);

(4) Nunez's daughter's third party function report, in which she indicated that she helped Nunez with daily tasks and confirmed the issues Nunez discussed in her own function report (citing R. 260–67);

(5) Nunez's testimony, including her statements that she cannot drive on the highway because of her nerves; that she could not work because "[w]hen I last worked they denied my unemployment benefits, and that makes me feel very depressed, and then I was seeing my therapist and then she said that it was best if I applied to disability because I wasn't able to keep working" (R. 39–40); that she takes Xanax; that she takes Flexeril and Advil or Ibuprofen for her pain; and that she cannot stand for more than two hours and must move around a lot (citing R. 33–79);

(6) Treatment records from Dr. Doshi from 2009 to 2011, in which Dr. Doshi noted that Nunez complained of neck pain, but had a negative image of her cervical spine; that heaving lifting aggravated her pain; that she had a history of obesity and diabetes; that Nunez complained of back pain in July of 2010; that her pain was due to her obesity and history of heavy lifting at her job; that her pain did not radiate into her lower extremities; that he advised her to take Flexeril and Naprosyn for her pain; and that her diabetes was under control and her blood sugar was within normal limits because of her diet (in 2011) (citing R. 318–79);

---

[5]     The ALJ assigned great weight to these opinions. (R. 26)

(7) Records of a consultative examination with Dr. Weber in July of 2011, in which Nunez reported a two year history of back pain, said she could only sit or stand for an hour, and said that physical therapy offered only temporary relief; and in which Dr. Weber noted that Nunez was able to ambulate independently and at a reasonable pace; that Nunez was able to carry out activities of daily living independently; that Nunez was not in any acute distress; that Nunez had tenderness in her lumbar spine but no muscle spasms or atrophy; that Nunez's muscle strength was 5/5 in her extremities and her cervical spine range of motion was normal; and that Nunez suffered from chronic lower back pain, chronic sprain/strain, and myofascial pain syndrome (citing R. 380–83);

(8) Psychological records from Dr. Doshi, in which Dr. Doshi wrote that Nunez suffered from depression (diagnosed in July of 2010), and that she was seeing Dr. Vagramele and had been prescribed medication (citing R. 318–79);

(9) Records from a psychological examination by Dr. Baharlias in July of 2011, in which Nunez reported depression and difficulty concentrating, said she was taking citalopram, and said she was seeing a psychiatrist and therapist; and in which Dr. Baharlias noted that Nunez was depressed and anxious, but exhibited appropriate behavior; that her main problems concerned her finances and inability to sleep; that she had a normal gait and posture; and that her GAF[6] was 55–60 (citing R. 387–89); and

(10)   A report by Dr. Swan, in which Dr. Swan opined that Nunez could lift and carry twenty pounds, and that she is limited to standing and walking for two hours and sitting for less than six hours per day[7] (citing R. 296–317).

---

[6]      A GAF (Global Assessment Functioning) score is a scale used by the American Psychiatric Association to evaluate mental disorders. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) (DSM-IV).

A GAF score in the range of 51–60 indicates "[m]oderate symptoms (e.g., flat and circumstantial speech, occasional panic attacks) OR moderate difficulty in social occupational, or social functioning (e.g., few friends, conflicts with co-workers)." www.omh.ny.gov/omhweb/childservice/mrt/global_assessment_functioning.pdf.

[7]      The ALJ agreed with Dr. Swan's first assessment that Nunez can lift and carry twenty pounds, but gave no weight to the remainder of Dr. Swan's opinion

(R. 23–26)

The ALJ considered the records substantiating Nunez's physical and psychological ailments and incorporated the records (with the exception of portions of Dr. Swan's opinion) in his RFC assessment. Accordingly, the ALJ found that Nunez has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that due to her depression, she is also limited to simple routine jobs in a low contact setting (i.e. that does not involve dealing with the general public, and that only involves low contact with coworkers and supervisors).

(*Id.* 23) Clearly, the ALJ accepted most of the evidence of Nunez's impairments, including her psychiatric history of depression, and gave his reasons for discounting a portion of the evidence. Thus, his RFC determination is supported by substantial evidence.

### 2. ALJ's consideration of Nunez's subjective complaints

Nunez argues that the ALJ did not sufficiently consider her subjective complaints. I find that the ALJ adequately explained his assessment of Nunez's subjective complaints, and even accepted her testimony and function report claims in large part.

Social Security Regulation 96-7P provides:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to

---

because Dr. Swan did not support his opinion with any objective findings and did not explain his reasoning. (R. 26)

work may not be disregarded solely because they are not substantiated by objective medical evidence.

The ALJ's credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96-7P; *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b).

The ALJ complied with these instructions. Significantly, the ALJ *credited* Nunez's subjective complaints (in her testimony and her function report) in his step three analysis of the four functional areas of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. (R. 22–23) In fact, the ALJ relied exclusively on Nunez's testimony, her function report, and her daughter's third-party function report in making his determinations. (*Id.*)

In his RFC determination, the ALJ similarly credited most of Nunez's function report and testimony. (*Id.* 24–26) The ALJ specifically noted that the objective medical evidence (cited and explained in the previous section) does not support Nunez's claim of complete disability. Even Nunez's own testimony and function report confirmed that she is able to carry out the activities of daily living independently and she takes only Flexeril and ibuprofen, relatively mild medications, for her pain. (*Id.* 26, 42–46, 252–59) Medical reports also indicated her depression would improve with therapy. (*Id.* 26, 87) Thus, substantial evidence supports the ALJ's evaluation of Nunez's subjective complaints.

3. ALJ's weighing of Dr. Swan's medical opinion

Finally, Nunez challenges the ALJ's assignment of no weight to portions of Dr. Swan's opinion. (Pl. Br. 19–20, 37) I find that substantial evidence supports the ALJ's evaluation of Dr. Swan's opinion.

An ALJ is free to credit one medical opinion over another, provided that the ALJ considers all of the evidence and gives reasons for discounting the evidence he or she rejects. *See Diaz v. Commissioner of Soc. Sec.*, 577 F.3d 500, 505-06 (3d Cir. 2009); *Plummer v. Apfel*, 186

F.3d 422, 429 (3d Cir. 1999) ("An ALJ . . . may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided."); *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (citations omitted) (An ALJ may "properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects.").

As Social Security Ruling 96-5p states,

> [T]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance. Giving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.

The ALJ credited Dr. Swan's opinion that Nunez could lift and carry twenty pounds. (R. 26)

The ALJ did not credit the remainder of Dr. Swan's opinion, particularly Dr. Swan's opinion that Nunez was limited to standing and walking for two hours and sitting for less than six hours. (*Id.*) The ALJ explained that Dr. Swan did not offer an explanation for his opinion or support his opinion with objective medical evidence. (*Id.*) Indeed, Dr. Swan's opinion as to Nunez's ability to stand, walk, and sit is limited to his checking off boxes on a form. Those check marks are not accompanied by any explanation or relevant medical findings.[8] (*Id.* 296–317) Thus, the ALJ gave an adequate explanation for his rejection of part of Dr. Swan's opinion.

---

[8]    It appears that Dr. Swan is Nunez's cardiologist, so the records attached to the form are cardiology records. There is no accompanying explanation as to why these records are relevant to Dr. Swan's assessment of Nunez's ability to stand, walk, and sit, or how these records substantiate Dr. Swan's assessment.

## III.   CONCLUSION

For the foregoing reasons, the ALJ's decision is AFFIRMED. An appropriate order accompanies this Opinion.

Dated: August 12, 2015

**KEVIN MCNULTY**
**United States District Judge**